IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INDEPENDENT ENTERPRISES, INC.** | ) |
|          **Appellant,** | ) |
| | ) |
|     v | )   2:10-cv-51 |
| **LASALLE BANK NATIONAL ASSOCIATION,** | ) |
|          **Appellee,** | ) |
| | ) |
|          **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER OF COURT**

Pending before the Court is the Notice of Appeal (Document No. 1) from an Order of the Bankruptcy Court dated November 19, 2009, which granted the motion for summary judgment filed by LaSalle Bank National Association ("LaSalle Bank")[1] and denied the cross-motion for summary judgment filed by Independent Enterprises, Inc. ("Independent"). An extensive appendix has been provided to the Court, the issues have been thoroughly briefed (Document Nos. 3, 4, 6), and the appeal is ripe for disposition.

Factual and Procedural Background

This case arises in the context of the commercial development of an industrial park. LaSalle Bank provided an open-end construction mortgage in April 2005 to the debtor, Imperial Business Park, L.P. ("IBP"), in connection with IBP's purchase of a "First Parcel" of property which consisted of approximately 171 acres. The mortgage was duly filed. Shortly thereafter, IBP filed a Land Development Plan which contemplated the acquisition of two contiguous

---

[1] The appellee is Bank of America, N.A., successor by merger to LaSalle Bank. For clarity and consistency, the Court will continue to refer to appellee as LaSalle Bank.

parcels of land totalling approximately 22 acres from Collier Development, L.P. ("Collier") (hereafter referred to as "Parcel A" and "Parcel B," collectively the "Collier Parcels"), for the purpose of storm water management, utilities, and ingress and egress.  Collier executed an acknowledgement that these parcels were included in the Land Development Plan.

Appellant Independent is a contractor.  Both Collier and Independent are owned and operated by James and Jack Cargnoni.  On October 10, 2005, Independent and IBP entered into a "Clearing and Grubbing" contract.  Independent commenced its work, which involved heavy machinery and earth moving on the First Parcel, the same day.  The contract contained the following "No-Lien" provision in Addenda 1 (emphasis added):

> It is specifically agreed by and between the parties to this Contract that Contractor shall not file, nor will it permit or suffer any subcontractors, materialmen or their persons under it to file, nor shall any such contractor, subcontractor, materialmen or other person file any mechanics or other lien or claim for work done or materials furnished **in or about the performance of this Contract or changes therein, against any structure covered by this Contract**.  Contractor hereby agrees to require all subcontractors, materialmen or other persons who perform work to furnish materials **in or about the performance of this Contract** to execute waiver of lien agreements in form acceptable to Owner prior to performing such work or furnishing such materials.  Evidence of the execution of such waivers must be furnished prior to the commencement of construction.  Contractor shall save and hold Owner harmless from and against any and all claims of any kind or character whatsoever that may be filed against the aforesaid property or property interests by a subcontractor, materialman, or any other person **arising out of or in any manner connected with the performance of this Contract or any agreement supplemental thereto**; and Contractor shall, at its own expense, defend any and all actions based upon such liens or claims and shall pay all charges of attorneys and all costs and other expenses arising therefrom.  Contractor shall execute a Waiver of Liens agreement in form acceptable to Owner upon request by Owner.

On October 15, 2005, Independent executed two substantially identical Waiver of Liens forms.  IBP's signatures were not notarized, and the forms were not filed, until November 30 and

December 20, 2005, respectively.  The text of the Waiver of Liens form provides, in relevant part (emphasis added):

> NOW, THEREFORE, in consideration of the execution and delivery of the Contract and intending to be legally bound hereby, Contractor, for itself, its successors and assigns, and all subcontractors and other parties acting through or under it or them, does hereby covenant, promise and agree that no mechanic's liens or claim or other lien or claim **of any kind whatsoever** shall be filed or maintained **against the Improvements or the Premises or any part or parts thereof or the appurtenances thereto**, by Contractor or by any subcontractors, materialmen, laborers or others for work done or for any tools, equipment, materials or supervision or other **services furnished under the Contract or any subcontract and supplements thereto**, written or oral, or by any other party acting through or under them, or any of them, **for and about the Improvements, the Premises or any parts thereof,** or on credit thereof.
>
> This Waiver of Liens shall be an independent covenant and shall operate and be effective as well with respect to work done and materials and services furnished under **any supplemental contract** for extra work **in connection with** the construction of the Improvements as to any work and labor done and materials furnished under the Contract.

The terms "Improvements" and "Premises" are defined by reference to a contract "for the construction of certain improvements (the "Improvements") on certain real property owned by the Owner in North Fayette Township, Allegheny County, Pennsylvania (the "Premises")."  The property description in each of the Waiver of Liens forms was defined as: "All that certain parcel located in North Fayette Township, Allegheny County, Pennsylvania, known as Block & Lot 9929-X-60 in Recorder of Deeds of Allegheny County."  That description refers to the original 171 acre tract and does not include Parcel A or Parcel B.  The Waiver of Liens forms further provided that "in order to give Owner full power and authority to protect itself, and the Improvements and the Premises against any and all claims filed by Contractor," any attorney was authorized to mark "satisfied" "**any and all mechanics' liens** or claims or other liens or claims

3

**of any kind whatsoever** filed or maintained against the Improvements or the Premises **or any parts thereof or the appurtenances thereto.**"

On December 21, 2005, Independent and IBP entered into a second contract (the "Grading Contract"). Independent had commenced work under this contract on the First Parcel two days earlier. The Grading Contract had an addendum with a "No-Lien" provision that was substantially identical to the "No-Lien" provision in the Clearing and Grubbing contract.

Parcel A was acquired by IBP from Collier in December 2005 and Parcel B was acquired in January 2006. The LaSalle mortgage was amended and duly filed on December 22, 2005 and January 4, 2006 to reflect that the Collier Parcels were covered by the mortgage. No work was performed by Independent on Parcel A or Parcel B prior to January 4, 2006. The Clearing and Grubbing contract was amended to include those two parcels, although the "No Lien" provision was not modified.

Through May 31, 2006, IBP timely paid all payment applications submitted by Independent on both contracts. IBP then began to experience cash flow shortages and payments became delayed. IBP assured Independent that the problems were temporary, and Independent continued to perform work until September 14, 2007. Independent was ultimately paid in full for the work it did on the Clearing and Grubbing contract, but was not fully paid for its work on the Grading contract. On October 1, 2007, Independent filed mechanics' lien claims in the amount of $766,212.09 in the Court of Common Pleas of Allegheny County as to both of the Collier Parcels.

On October 2, 2008, IBP commenced Chapter 11 bankruptcy proceedings and the parties filed proofs of claims. The Bankruptcy Court ordered the parties to file cross-motions for

summary judgment as to their competing claims to IBP's bankruptcy estate. After conducting oral argument on November 18, 2009, the Court ruled in favor of LaSalle "for the reasons expressed on the record this date." A "Proceeding Memo" has been included in the appendix which briefly summarizes the contentions made by the parties but does not articulate the Court's reasoning. No transcript has been provided and therefore this Court is unable to review the legal analysis undertaken by the Bankruptcy Court.[2]

Standard of Review

The Bankruptcy Court's rulings of law are subject to plenary review. The Bankruptcy Court's factual findings are subject to a "clearly erroneous" standard. *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999).

Legal Analysis

The parties dispute the priority of their respective claims against the IBP bankruptcy estate. Independent argues that its mechanics' liens on the Collier Parcels take priority over LaSalle Bank's mortgages on those properties. LaSalle Bank contends that Independent waived its right to file mechanics' liens on the project.

Under Pennsylvania law, a contractor "may waive his rights to file a claim by a written instrument signed by him or by any conduct which operates equitably to estop such contractor [ ] from filing a claim." 49 P.S. § 1401. LaSalle Bank points to the "no lien" clauses in

---

[2] Although Fed. R. Bankr. P. 8006 does not require that the parties provide a hearing transcript, under the circumstances of this case the transcript would have been very helpful.

Independent's Clearing and Grubbing and Grading contracts and to the Waiver of Lien forms which were executed by Independent.

The crux of Independent's argument is based on the property description in the Waiver of Liens forms. Under Pennsylvania law, a Waiver of Liens form need only describe the property with sufficient clarity to put a reasonable contractor on notice that the construction project was covered by the waiver. *Trustees of C. I. Mortg. Group v. Staff of Huntington, Inc.*, 399 A.2d 386, 388 (Pa. 1979). In *Patrick McGuigan Roofing Co., Inc. v. Kallman*, 592 A.2d 1368 (Pa. Super. 1991), a contractor sought to invalidate a waiver of liens because there was confusion as to the street address used in the property description. The *Kallman* Court, citing *Huntington*, rejected this argument and explained: "the document barring liens must merely contain sufficient information to provide notice to the subcontractor that the building involved is in fact the one for which he supplied material and/or labor." 592 A.2d at 1369. In this case, Independent had actual notice of the "lien waiver" because it was the entity that executed the contracts andWaiver of Liens forms. Moreover, because Independent and Collier were related companies, its owners and operators had uniquely first-hand knowledge about the property at issue.

It is undisputed that LaSalle's mortgage on the First Parcel of property was duly recorded prior to the commencement of work by Independent on the First Parcel. It is also undisputed that LaSalle's mortgage was amended to include the Collier Parcels, and duly filed, before Independent performed any work on the Collier Parcels. TheWaiver of Liens forms were recorded before Independent performed any work on the Collier Parcels. Nevertheless, Independent's theory is that its mechanics' liens on the Collier Parcels have priority because its visible construction work on the First Parcel commenced prior to the amendments of the

mortgage to cover the Collier Parcels.  In other words, Independent asks the Court to consider all three parcels as a single project for the purpose of determining the priority of its mechanic's liens because work performed on the Collier Parcels was "necessary and integral" to the project as a whole.  At the same time, Independent argues that the Court should _**not**_ consider all three parcels as part of a single project for the purpose of interpreting the Clearing and Grubbing and Grading contracts and the Waiver of Liens forms.  Independent cannot have it both ways.

The Court concludes that the language of the Independent - IBP contracts and Waiver of Liens agreements is more than sufficient to encompass the Collier Parcels.  Accordingly, Independent waived its rights to file mechanics liens by a written instrument.  49 P.S. § 1401.[3]  The Clearing and Grubbing contract and the Grading contract contained substantially identical "no lien" provisions.  Those provisions were not narrowly limited to work that occurred on the First Parcel of property.  To the contrary, Independent agreed that no liens would be filed **"in or about the performance of this Contract or changes therein."**  Moreover, even though Independent knew that the Collier Parcels would be purchased as part of the project, it agreed that the "no lien" clause would apply to "changes" in the performance of the contracts and to "any agreement supplemental thereto.**"**  Independent has argued at great length that the work on the Collier Parcels was "a necessary and integral part" of the construction of the buildings erected as part of the project.  By the same token, that work must be "in or about the performance of the Contract."  Independent's work on the Collier Parcels certainly arises out of and is "in any manner connected with the performance of this Contract."  In addition, Independent contractually

---

[3]Accordingly, the Court need not consider whether Independent should be equitably estopped from filing mechanics' liens on this project.

agreed not to file a mechanics lien "against any structure covered by this Contract."  Although the mechanics' liens were putatively filed against the Collier Parcels, Pennsylvania law provides a right to assert mechanics' liens only when the excavation, grading and similar work is "incidental to" the construction of a building or other structure.  *King's Oak Liquidators v. Bala Cynwyd Hotel Assoc.*, 592 A.2d 102, 103 (Pa. Super. 1991).  The buildings/structures to which Independent's work on the Collier Parcels must be incidental are the very same "structure[s] covered by this Contract."  Indeed, Independent contractually agreed to hold IBP harmless from mechanics' liens "**arising out of or in any manner connected with the performance of this Contract or any agreement supplemental thereto.**"  In sum, the Independent-IBP contracts precluded Independent from filing mechanics' liens on the Collier Parcels.

TheWaiver of Liens forms contain similarly broad language.  Independent waived the right to file a mechanics lien "of any kind whatsoever" **"against the Improvements or the Premises or any part or parts thereof or the appurtenances thereto**."  TheWaiver of Liens forms did define the "Premises" to be limited to the First Parcel, but the term "Improvements" is separately defined and is not so limited.  In any event, theWaiver of Liens forms clearly encompass not only the "Premises" and the "Improvements," but also all "parts" and "appurtenances thereto."  In addition, theWaiver of Liens forms apply to all services rendered by Independent under the construction contracts.  Finally, to dispel any potential doubt as to the parties' intent, the Waiver of Liens forms provide that they were being executed "in order to give Owner full power and authority to protect itself, and the Improvements and the Premises against any and all claims filed by Contractor."

In *Mele Const. Co., Inc. v. Crown American Corp.*, 618 A.2d 956 (Pa. Super. 1992), the

8

Court faced a factually similar situation. The contractor had entered into several contracts withWaiver of Liens provisions which related to the "Viewpoint Mall Expansion and Renovation." The contractor argued that the property description appended as an exhibit to those contracts did not encompass all of the parcels of land involved in the project. The Court rejected the contractor's argument, affirmed the owner's preliminary objections, and explained:

> The fiveWaiver of Lienss agreements in the certified record clearly and plainly specify that Mele Construction Company waived all rights to file any mechanics' liens in connection with work performed for Crown American on the Viewmont Mall Expansion and Renovation. Appellant has not alleged that the construction work which provides the basis for its mechanics' lien claims was performed for Crown American in conjunction with any project other than the Viewmont Mall Expansion. Appellant merely contends that the metes and bounds description allegedly contained in the missing "Exhibit 'B' " fails to enclose all the land on which the Viewmont Mall Expansion has been constructed. Under these circumstances, we see no indication that there is any true controversy between the parties regarding the location of the work site covered by theWaiver of Lienss agreements.

The same result is appropriate in this case. In light of the broad language of the construction contracts andWaiver of Liens forms, Independent has waived its right to file mechanics' liens on the project. Independent's technical legal argument regarding the property description does not create a "true controversy" regarding the locations covered by those agreements. As Independent's position is without merit, the Bankruptcy Court properly granted summary judgment in favor of LaSalle Bank.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **INDEPENDENT ENTERPRISES, INC.** | ) |
| **Appellant,** | ) |
| | ) |
| v | ) 2:10-cv-51 |
| **LASALLE BANK NATIONAL ASSOCIATION,** | ) |
| **Appellee,** | ) |
| | ) |
| **Defendant.** | ) |

### ORDER OF COURT

AND NOW this 11th day of March, 2010, in accordance with the foregoing Memorandum Opinion, it is ORDERED, ADJUDGED and DECREED that the November 19, 2009 Order of the Bankruptcy Court is hereby **AFFIRMED** and the appeal filed by Independent Enterprises, Inc. is **DISMISSED**.  The clerk shall docket this case closed.


BY THE COURT:


s/  Terrence F. McVerry
United States District Court Judge



cc:     Robert E. Dauer , Jr., Esquire
        Email: red@muslaw.com

        Brant T. Miller, Esquire
        Email: bmiller@dmclaw.com

        J. David Ziegler, Esquire
        Dickie, McCamey & Chilcote, P.C.
        Two PPG Place, Suite 400
        Pittsburgh, PA 15222

        James McNally, Esquire
        Email: jmcnally@metzlewis.com